UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,

                                       1:25-cr-00162-WO-1

     Plaintiff,

v.

JAMES ANDERSON MAUNEY

     Defendant.

_____/

<u>DEFENDANT'S SENTENCING MEMORANDUM</u>

James Mauney is a 44-year-old husband, father, dedicated church member, and provider who awaits the judgment of this Court for a serious crime against his own son. He has accepted full responsibility and has shown genuine remorse for his actions. He desires the most intensive mental health and substance abuse treatment available so that he can return to society a better man. For the reasons outlined below, and based on the 3553(a) factors, Mr. Mauney humbly requests a sentence below the guideline range.

## I. STATEMENT OF FACTS

James Mauney is a lifelong resident of Guilford and Randolph Counties. He has lived on family land with his wife and children in the small town of Staley, NC, for the past 16 years prior to his arrest. He has been in a committed relationship with Wendy Mauney for the last 21 years, and they have been married for 17 years. PSR ¶ 51. He was raised in a loving and supportive household in the rural community of Pleasant Garden, and he enjoys an extremely close relationship with his twin brother, Matthew Mauney.

1

However, his early life was not without difficulty. His parents' marriage struggled when his dad purchased an unsuccessful restaurant business, resulting in financial stress and time away from home for his dad. Unfortunately, James was accidentally exposed to pornography at a very young age. PSR ¶ 44-45. This later resulted in an adult pornography addiction that James struggled with on and off throughout his adolescent and adult life. He struggled in silence due to extreme shame and a lack of understanding that there was treatment available. It was only after his arrest on the corresponding state charges in this case that he learned that his father also struggled with pornography addiction. PSR ¶ 49.

The most significant turning point in James' early life was when his father was involved in a serious motorcycle accident. This occurred when James was just 17 years old and resulted in his father no longer being able to work. James dropped out of Randolph Community College, where he was pursuing a GED at the time, to work full time and help support his parents. PSR ¶ 49. He has always been a hard worker, often putting in long shifts as a truck driver to support his growing family. He was married to Wendy in 2008 when he was 27 years old, after dating her for 5 years. PSR ¶ 51. Around that same time, his father was self-medicating and battling addiction in the aftermath of his accident, and he died tragically three years later when James was only 30 years old in 2011. This was the same year Wendy and James had their first child (Kaitlyn), then welcomed their son L.M. about a year later. After his father's death and having two children so quickly, financial issues turned to marital issues, and James and Wendy separated for almost two years before reconciling in 2015. PSR ¶ 53.

Case 1:25-cr-00162-WO    Document 26    Filed 10/24/25    Page 2 of 13

James and Wendy's home life started to stabilize until 2019, when he began suffering extreme pain in his left leg, which he has described as feeling like a "jolt of electricity." This began a period of five years of intense pain and a feeling of hopelessness as James repeatedly sought medical care from various providers, only to be turned away without any solution. *See* PSR ¶ 54, 60. James candidly admits that he began self-medicating with alcohol (and later, prescription pain pills) during this time. Simultaneously, he was still struggling in silence with his pre-existing pornography addiction.

Medical records from Duke Hospital obtained by the undersigned counsel confirm that he was not finally diagnosed until an appointment with the medical team at Duke on April 23, 2023 – four long years after he began experiencing intense pain in 2019. He was finally evaluated by a specialist at Duke almost a year later - on March 5, 2024 - when James informed the doctor that, "the pain is so intense that he has missed up to a week of work when he has a flareup of pain." The records also confirm that James had been applying an Ace wrap as a compressive wrap to the left calf for approximately 3 years, and this is the only thing that effectively eliminated the pain. After this specialist consult, surgical excision of the lesion was scheduled and performed on April 12, 2024. The surgery was successful, and James has not experienced further pain. PSR ¶ 60.

During the months of January and February 2024, while he was still experiencing extreme pain associated from his untreated leg condition and self-medicating for the same, James created the video files of his son (L.M.) that form the basis of the instant offense. After viewing each video file in the presence of counsel for the Government, all files except

3

one are simply depictions of the minor's penis, with no overt sexual activity involved. These depictions were created while the minor was asleep. One video – the video described in Paragraph 10(o) of the PSR, involved James engaging in sexual contact with L.M. by fondling the penis on top of the minor's clothes. According to the PSR, these videos were created on two distinct dates, January 14 and February 3, 2024.[1]

There are also corresponding still images as outlined in PSR ¶ 4; most or all of which were made at the same time as the video files given the scenes they depict.[2]

## II. ARGUMENT

### A.    Applicable Law

After *Booker*, this Court is not required to impose a guideline range sentence. In fact, a sentencing court may not even presume that a guideline sentence is reasonable or appropriate. *United States v. Mendoza-Mendoza*, 597 F. 3d 212, 216-217 (4th Cir. 2010) (sentence is procedurally unreasonable if District Court presumes guideline range sentence is appropriate.). At best, the guidelines will only "reflect a *rough approximation* of sentences that *might* achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338,

---

[1] As counsel for the Defendant pointed out in filed PSR objections, the dates listed on the forensic exam in discovery show that the creation dates for the video files were January 14 and February 4. On January 14, eight video files were created between the hours of 2:42 AM and 5:45 AM. On February 4, two video files were created at 2:29 AM and 2:51 AM, respectively. The file created at 2:51 AM, file name ending in "215052," is the file where the limited sexual contact occurred. This objection does not affect the Guideline Range, but is noted here for its relevance to the nature and circumstances of the offense.

[2] As such, the exact number of dates where video or image files were created is unknown. However, it is conceded that files were created on at least two separate occurrences.

4

350 (2007) (emphasis added). Ultimately, the Court must impose the minimum sentence necessary to comply with the purposes of punishment. *See* 18 U.S.C. 3553(a)(2).

As set out below, Mr. Mauney moves this Court to vary and depart below the guideline range and impose a sentence of 210 months in BOP, followed by a lifetime of supervised release. This sentence will ensure that James is either imprisoned or under the close supervision of the United States Probation Office for the rest of his life. The requested sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

In support of his requested sentence, the Defendant submits the following factors as most relevant under 18 U.S.C. § 3353(a): (1) according to the most recent U.S. Sentencing Commission report on production offenses, almost 70 percent of production offenders received a sentence below the guideline range ; (2) the Defendant's acceptance of responsibility, lack of any criminal history, genuine remorse, and willingness to engage in treatment; (3) the Defendant's strong and continuing family support; (4) the need for general and specific deterrence; (5) the need to provide just punishment and promote respect for the law; and (6) the nature of the production conduct, which while serious, did not involve distribution, only occurred on two confirmed occasions, and involved only a single (limited) instance of sexual contact during a period when the defendant was self-medicating to address debilitating pain that has since been treated.

**B.**   **Nature and Circumstances of the Offense and Defendant's History and Characteristics; 18 U.S.C. § 3553(a)(1)**

   **1. The Offense**

5

The PSR accurately describes the offense conduct, including both the production offenses on two dates and the Possession of Child Pornography, which while dismissed as part of the plea agreement nonetheless constitutes relevant conduct. In addition to producing inappropriate files of L.M. on two occasions, James also possessed unrelated child exploitation material totaling 138 still images in his cloud storage. PSR ¶ 11. On information and belief, the videos of L.M. were placed in cloud storage unintentionally, given that cloud storage typically results when a device (such as the Samsung phone involved here) backs up the cloud.

No images of L.M. were distributed, passively or otherwise. It appears that James deleted the images/videos of L.M., since they were not located on the device and were only located in cloud storage for the device. As noted above, all but one of the files involving L.M. are either still images of the genital area, or videos depicting that same area. Although these images and videos do qualify as child exploitation material in that they involve "lascivious exhibition of genitals," L.M. is not involved in any sexual activity, L.M. is unaware the videos are being made due to being asleep. Additionally, a sexual act is only performed on the child in one single instance described above, which was *outside* the clothing.

Overall, when comparing the instant offense to other production cases, especially those in which the guideline range is massively increased by enhancements for "pattern of activity" and "sexual act," this case is comparatively less serious given the extremely limited nature of the sexual contact, and the fact that only the bare minimum threshold for

a pattern enhancement – that is, files produced on two occasions – is present here. Additionally, the number of images possessed that were unrelated to L.M. (138 still images, no videos) is demonstrably less than the typical federal case involving the possession or receipt of child exploitation material.

As a result, the guideline range at the statutory maximum overstates the seriousness of the offense. The guideline range that would have resulted[3] from the stipulations in the plea agreement, under which the pattern of activity enhancement would not have applied, results in an adjusted guideline range of 210-262 Months. This range produces a sentence that is sufficient, but not greater than necessary, to comply with the purposes of punishment. *See, e.g. United States v. Bruffy,* 2012 U.S. Dist. LEXIS 41299, *17-18, No. 6:11CR00006-1 (W.D. Va. Mar. 26, 2012) (finding that, although the enhancement for pattern of activity under USSG 4B1.5 technically applied, a significant downward variance was appropriate where no distribution was involved, the child was unaware the video was made and suffered no apparent physical or psychological harm, the defendant had positive history and characteristics, and the sentence imposed was still longer than sentences imposed for far more serious sexual crimes in state court within the same jurisdiction).

In *Bruffy*, the district court was faced with a very similar sentencing conundrum to the one before the Court in this case. Bruffy was convicted of both Production and Possession of Child Pornography, with a resulting statutory maximum sentence of 70 years.

---

[3] *See* PSR, Addendum p. 1, noting the joint objection of the parties to the application of the pattern of activity enhancement, pursuant to the stipulated plea agreement. Absent that enhancement, the applicable Guideline Range would be 210-262 Months. Although plea agreement stipulations are concededly not binding on the Court, they are highly persuasive.

His guideline range, which included the application of "pattern of activity" enhancement under both 2G2.2 (the possession guideline, since he pled guilty to both production and possession) and 4B1.5 (the pattern enhancement that applies in this case) was Life, reduced to the statutory maximum of 70 years. The Court, although finding that the enhancements did not constitute impermissible double counting, found that the applicable guidelines resulted in a sentence that was greater than necessary to comply with 3553(a) factors.

Notably, *Bruffy* involved images produced of two children, one male and one female, both of whom were unaware the images were created. The court specifically noted that the images did not depict "sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse," but instead counted as illegal material due to the (as here) lascivious exhibition of the children's genitals. The Court further noted that one child was asleep, while the other child was bathing, and therefore both were unaware and did not suffer physical or psychological harm. Even after accounting for the fact that the defendant also possessed 917 images of suspected CSAM and 127 videos (far more than Mr. Mauney), the Court still found it appropriate to disregard the 5-level pattern enhancement and sentenced Bruffy 67 percent below the bottom of his guideline range.[4] Here, as in *Bruffy*, James asks the Court to take into account the unique factors presented by his offense conduct and associated guideline range, and asks the Court to sentence him to 210 months, which is 41 percent below the bottom of his guidelines.

---

[4] Mr. Bruffy's guideline range was capped at the statutory maximum (840 months) and he received a downward variance to a sentence of 276 Months.

## 2. Defendant's History and Characteristics

James' history and characteristics can best be understood after reviewing the numerous character letters attached to this memorandum as *Exhibit A*. What stands out most about the descriptions of him by his family and friends is his heart for helping others. He is not only a hard worker who has consistently worked twelve-hour days to make ends meet for his own family, but there are also numerous instances described in the letters where he sacrificed personally to assist his church, or even strangers. This is incredibly encouraging for his prospects of re-assimilating into society after serving his time in BOP. As he will no doubt learn in sex offender specific treatment, sexual crimes are inherently selfish, even narcissistic, acts.

However, the man described in these letters is the opposite of that. Outside the instant offense, he has lived for others, not for himself. This dates all the way back to his early adulthood when he dropped out of the GED program to work full time to help support his parents after his father's accident. It includes an occasion where he helped rescue a stranger from a vehicle accident, and another occasion where he went out of his way to assist a struggling family member during terrible weather. With appropriate sex offender specific treatment that can help him to identify the source of his pornography addiction and substitute healthy habits, he can return to being the man he set out to be. There is a reason that, despite his serious crime, his family still support him. That is because he has shown repeatedly that he is worth a second chance.

Beyond his character, he has positive work history and the ability to earn a legitimate income ever after sustaining such a serious felony conviction and registering as

a sex offender. He possessed a valid CDL and many years of experience operating 18-wheelers for various reputable companies. When he gets out of BOP, he will have the immediate ability to generate an income for himself and his family, which inherently reduces his risk of recidivism.

## C. Avoid Unwarranted Sentencing Disparities; 18 U.S.C. § 3553(a)(6)

A downward variance is necessary in this case to avoid an unwarranted sentencing disparity with (1) the more than 70 percent of production offenders who received below-guideline sentences in Production cases nationwide during the last year thoroughly studied by the U.S. Sentencing Commission[5]; and (2) numerous state offenders in counties within the Middle District who have received lesser sentences for far more serious sexual misconduct involving minor children. See *Bruffy*, 2012 U.S. Dist. LEXIS 41299, *21 (noting that the sentencing court "take[s] exception to sentences received by state court defendants in the Western District of Virginia for far more aggravated crimes," and collecting relevant cases). Likewise, defendants in state courts in North Carolina are also receiving lower sentences for far more serious sexual misconduct with children. *See, e.g., State of North Carolina v. Robert Peele*, 20CR000007-820 *et al.* (the defendant pled guilty

---

[5] *See* U.S. Sentencing Commission, *Federal Sentencing of Child Pornography Production Offenses*, p. 22, available at *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf*) (last accessed Oct. 24, 2024) (hereinafter, "2021 Report") (finding that "less than one third of child pornography production offenders sentenced under 2G2.1 received a sentence within the guideline range in fiscal year 2019."). The report further concludes that, of the 512 production offenders sentenced in federal courts nationwide in 2019, **36.1 percent received a non-government sponsored downward variance (emphasis added)**. *Id*. at 22. As a result, while the average guideline range for production offenders was 332 months, the average sentence imposed was only 275 months, reflecting (on average) a downward variance or departure of 17 percent below range. *Id*. at 21.

in Scotland County to 5 counts of Statutory Rape of a Child 15 or Younger and 5 counts of Indecent Liberties with a Child, and received an active prison sentence of 192 months minimum in the Division Adult Corrections)[6]; *State of North Carolina v. Cesar Vijil Ramos*, 24CR345362-750 (the defendant was initially charged with Statutory Rape of a Child 15 or Younger, but pled guilty to the lesser offense of Indecent Liberties and received a suspended sentence with 36 Months of Supervised Probation).[7]

## D. Restitution, Rehabilitation, and the Need to Protect the Public from Further Crimes

Mr. Mauney has stipulated to restitution in the amount of $3,000 to the sole victim that has made a restitution request in this case. Mr. Mauney is committed to paying this restitution at the earliest possible date, via the inmate financial responsibility program and any funds that can be contributed by his family. Regarding the need for rehabilitation, Mr. Mauney recognizes that he needs intensive mental health treatment, as well as substance abuse treatment since issues with substance abuse contributed to his offense conduct. Although the health issues that triggered the substance abuse problem have been abated by successful surgery, Mr. Mauney wishes to engage in all available treatment to ensure he never again falls back into the pattern of behavior that led to the instant offense.

---

[6] This case disposition is available via e-courts at https://portal-nc.tylertech.cloud/app/RegisterOfActions/#/966013B2AC8BD27C45C419A3C635CCB63195F44C1F80 0F02B3EB4B61357F4A8D712CB6B9A78F924AE9536EF37AC0325784E843DBF01A8CDDE45B8BB 5810E3D72ED51A8849EB06705CAE32EF8B0DE1B9C/anon/portalembed

[7] This case disposition is available via e-courts at https://portal-nc.tylertech.cloud/app/RegisterOfActions/#/9DF1A28F891E4D0ECE5021114E078EC4E582FEE1A9FF E3368D78F8ECE61750C67D7AC3AF83A1FF46DB442EA2FDED08A68F208F6841638D0FA457D17 CEA100BB8705D9F236F65DD6963BAA298E9F999EE/anon/portalembed

Notably, regardless of what sentence is imposed by this Court, James' children will have reached adulthood by the time of his release from BOP. Given the significant safeguards that will be put in place, as recommended in his proposed conditions of supervised release, including limitations on his access to unmonitored electronic devices and warrantless searches of any devices he can access, along with prohibitions on contact with minor children without the approval of probation, the risk to the community of any re-offense will be very low. As such, the requested 17.5 year sentence, along with a lifetime on supervised release, is more than sufficient to protect the public and severely limit the risk of recidivism, along with providing for general deterrence to others who would contemplate similar crimes.

Respectfully Submitted,

*/s/ Kevin M. Marcilliat*

_____
Kevin M. Marcilliat
N.C. State Bar No. 44592
Marcilliat & Mills, PLLC
272 N. Front Street Suite 330
Wilmington, NC 28401
Telephone: (919) 838-6643
Facsimile: (919) 573-0774
E-mail: Kevin@nclawteam.com
*Retained Counsel for Defendant*

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the date shown below, he electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> AUSA Karla Painter
> DOJ-USAO
> 101 S. Edgeworth Street 4th floor
> Greensboro NC 27401
> Email: karla.painter@usdoj.gov
> Phone: 336-333-5351

This the 24th day of October, 2025.

Respectfully Submitted,

*/s/ Kevin M. Marcilliat*

_____

Kevin M. Marcilliat
N.C. State Bar No. 44592
Marcilliat & Mills, PLLC
272 N. Front Street Suite 330
Wilmington, NC 28401
Telephone: (919) 838-6643
Facsimile: (919) 573-0774
E-mail: kevin@nclawteam.com
*Retained Counsel for Defendant*